Manitowoc Trust Company, Administrator, Appellant, vs. Bouril and another, Respondents.

*February 6—March 3, 1936.*

628

For the appellant the cause was submitted on the briefs of *Edward Meyer* and *John R. Cashman*, both of Manitowoc.

For the respondents there was a brief by *Rouiller, Dougherty, Arnold & Kivett* of Milwaukee, and oral argument by *Suel O. Arnold.*

NELSON, J. The plaintiff contends: (1) That the court erred in refusing to change the answers of the jury, because there is no credible evidence to support the findings that the defendant did not fail to exercise ordinary care not to increase the danger to John Wizner in his position on the defendant's wrecker in respect to either the control or speed thereof, and that John Wizner assumed the risk of injury to himself; (2) that the court should have granted a new trial because of certain instructions which plaintiff asserts were erroneous in that they practically compelled the jury to find for the defendant, and because the court refused to submit to the jury the following questions:

"Was the defendant Charles Bouril negligent in respect to:
"(a) Permitting plaintiff John Wizner to ride on the running board of defendant Charles Bouril's wrecker?
"Answer (by the court): Yes.
"(b) In driving said wrecker at too great a speed around the corner?"

In order that the plaintiff's contentions may be understood it will be necessary to state the facts. On July 24, 1934, John Wizner, hereafter called the decedent, was about fifty years of age. On the evening of that day he attended a

dance in the village of Manitowoc Rapids. A tavern was run in connection with the dance hall. There was evidence tending to show that the decedent drank beer during the evening. He left the dance hall at about 12 o'clock in his automobile. A half hour later he returned to the dance hall, having in the meantime run his car into a ditch. The defendant was thereupon notified to bring his wrecker out to the dance hall. He arrived at about 1 o'clock. When he arrived, one William O'Leske, one Oscar Wiesner, and the decedent were waiting for him in front of the dance hall. O'Leske got into the driver's seat with the defendant. The decedent was also about to get into the driver's seat, but apparently concluding that there was not enough room in the seat, went around to the opposite side of the wrecker. The wrecker was a remodeled Dodge automobile, and had an ordinary driver's cab in front. Behind the cab was a platform boxed in by sides and an end which were about ten inches high. A crane was mounted on the platform. There were the usual running boards which extended from the front part of the cab back to certain iron bars that supported the crane. The driver's seat was wide enough for three men. Between the cab and the iron bars which supported the crane there was a space on each side of the car in which a person could sit. Oscar Wiesner climbed into the space on the right side of the wrecker. The decedent went around to the left side of the wrecker and either stood on the running board or attempted to get into the space mentioned on the left side of the wrecker. The wrecker was started and driven by defendant about three fourths of a block over a rough piece of road to the Green Bay road, which was an arterial highway. The defendant testified that he stopped at the arterial, but O'Leske and Wiesner both testified that he merely slowed down before turning left onto the Green Bay road. The Green Bay road was as smooth as pavement. The wrecker was driven only about one hundred and fifty to two hundred feet when a

slight curve in the road to the right was encountered. At about that point the decedent fell off the wrecker and sustained serious injuries from which he died some weeks later.

The principal dispute upon the trial was whether the decedent, just prior to the accident, was standing on the running board, a position which he had voluntarily assumed, or whether he was attempting to get into the space just back of the driver's cab. O'Leske testified that just before the wrecker was started he looked through the back window of the cab and observed that the decedent had one foot inside of the box and the other foot on the running board. Wiesner testified that, at the time he last observed the decedent, the latter was standing on the running board opposite the rear of the cab. The defendant testified that he told the decedent not to ride on the running board, but that the latter did so; that the decedent's position on the running board was directly opposite the left open window of the cab, and that he continued to occupy that position until he fell off. The plaintiff's counsel make a very earnest argument which would be much more to the point if we had authority to review the testimony, consider its weight, and pass upon the credibility of the witnesses. The argument now made to us is no doubt similar to that made to the jury.

As the verdict was framed, the jury was not required specifically to find whether, just prior to the accident, the decedent was voluntarily riding on the running board or attempting to get into the box of the wrecker. Considering, however, that the jury unanimously found that the defendant was not negligent after it was instructed as hereinafter stated, it is clear that the jury believed the testimony which tended to show that the decedent was riding on the running board and was not attempting to get into the box. The court instructed the jury as follows:

"If the evidence satisfies you to a reasonable certainty that when John Wizner stepped onto the running board and did

not intend riding on the running board, and that while on the running board the defendant started his car without giving John Wizner a reasonable opportunity to step off of the car or get to a position of safety, then the defendant failed to exercise ordinary care in the control of the truck not to increase the danger to Mr. Wizner."

Had the jury believed O'Leske's testimony rather than that of the defendant, corroborated to a certain extent by the testimony of Oscar Wiesner, it seems very clear that they would have found that the defendant failed to exercise the care which he owed to the decedent. The evidence as to the decedent's position on the wrecker just before the accident was conflicting, and, under the well-established law, the findings of the jury cannot be disturbed.

The plaintiff next contends that the trial court erred in not granting its motion for a new trial because, (1) certain instructions of the court practically compelled the jury to find for the defendant; and (2) because the court failed and refused to submit to the jury the requested questions hereinbefore recited.

The first contention is based upon certain instructions given to the jury pursuant to the request after it had been deliberating upon its verdict for some time. After a colloquy between the court and some of the jurors relating to the causal connection between the failure of the defendant to stop at the arterial and the accident, the court instructed the jury as follows:

"Counsel representing both parties are willing to have the court instruct the jury with reference to the arterial, which has just been mentioned by the forelady of the jury, and I give this instruction at this time with the consent of counsel on both sides.

"Members of the jury; the fact that there was an arterial sign at the junction of this road leading from the tavern to the Green Bay road has no bearing on this case.

"Forelady: Your honor, the jurors find there it has, that the arterial made an awful difference.

"Court: Well, in view of the fact that this matter has been mentioned and counsel on both sides are willing to have the court instruct in regard to the arterial being there or not being there, any connection that arterial might have with the cause of this accident is too remote; in other words, whether or not that arterial was there had no bearing on this case. I just mentioned that under the circumstances as they arose here, with consent of counsel. You must have in mind the instruction I gave you on cause and effect. In other words, I might drive down Eighth street at the rate of one hundred miles an hour, which surely would be negligence, and. yet that negligence might not cause any injury."

The plaintiff contends that there was testimony tending to show that the defendant did not stop at the arterial, and that, if he did not stop there, the speed of the wrecker at a point one hundred and fifty feet therefrom would be greater than it would have been had he stopped at the arterial. O'Leske, Wiesner, and the defendant all testified as to the speed of the wrecker at the time the decedent fell therefrom, and it was that evidence which the jury undoubtedly considered when answering the question relating to defendant's negligence with respect to speed. We agree with the trial court that, even if the defendant failed to stop at the arterial, there was no causal connection between such failure and the accident.

The plaintiff next contends that the failure of the court to submit the two requested questions constituted error. The questions requested were to some extent inconsistent with the controverted issues tried. The plaintiff asserted that the accident happened while the decedent was still attempting to get into the box of the wrecker. The defendant asserted that the accident happened while the decedent was voluntarily riding on the running board. The jury evidently concluded

that the decedent was riding on the running board, and apparently deemed O'Leske's testimony incredible. It was clearly within the province of the jury so to find. The jury might well have concluded that the decedent would have fallen from the wrecker while traversing the rough road between the dance hall and the Green Bay road if he had been in the precarious position described by O'Leske. The jury might well have believed that O'Leske's testimony was incredible in many respects. Shortly after the accident he made a statement concerning the accident, which was reduced to writing and signed by him after reading it, which he almost wholly repudiated at the trial.

The plaintiff seems to be of the opinion that, if the decedent was riding on the running board with the permission of the defendant, the plaintiff should be entitled to recover. Of course, if the defendant permitted the decedent to ride on the running board, he was negligent. Sec. 85.39 (1), Stats. If the decedent voluntarily rode on the running board, he was likewise negligent. Sec. 85.39 (2), Stats. Compare, *Wiese v. Polzer,* 212 Wis. 337, 248 N. W. 113. The jury had a right to believe that the defendant cautioned the decedent not to ride on the running board, but, notwithstanding such caution, the decedent rode there. If permitting the decedent to ride on the running board constituted negligence on the part of the defendant (and there is no doubt as to that), voluntarily riding on the running board likewise constituted negligence on the part of the decedent. In such a situation a finding of the jury that the negligence of the defendant was greater than that of the decedent could not be sustained.

We are of the opinion that subdivision (b) of the requested questions was covered by question 2 as submitted. The speed of the car at the time of the accident, which was just at the time that the wrecker was turning to the right

following a slight curve on the Green Bay road, was passed upon by the jury. It could not have misunderstood that the speed inquired about was that at the curve where the decedent fell off the wrecker. It is our conclusion that the controverted issues were covered by the questions submitted, and we perceive no prejudicial error in the form of the verdict or in its manner of submission.

*By the Court.*—Judgment affirmed.